IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
|     *Plaintiff*, ) | Civil Action No: |
| ) | |
|     v. ) | |
| ) | Judge |
| William Lee, Governor of the State ) | |
| of Tennessee, in his official capacity; ) | |
| ) | Magistrate Judge |
| And, ) | |
| ) | |
| David Rausch, Director of the Tennessee ) | |
| Bureau of Investigation, in his official ) | |
| capacity; ) | |
| ) | |
|     *Defendants.* ) | |

# COMPLAINT

1. Plaintiff John Doe[1] brings this 42 U.S.C. § 1983 action alleging that Defendants have violated, and continue to violate, Plaintiff's Constitutional right against *ex post facto* punishment through retroactive imposition on him of Tennessee's sex offender restrictions and monitoring requirements. Plaintiff seeks declaratory and injunctive relief against the Defendants.

## PARTIES

2. Plaintiff John Doe is an adult resident of Davidson County, Tennessee.

3. Defendant William Lee is the Governor of the State of Tennessee.

4. Defendant David Rausch is the Director of the Tennessee Bureau of Investigation, a state agency with a primary enforcement role in Tennessee's sex offender registration scheme.

---

[1] Plaintiff will be filing a motion to proceed under pseudonym and for protective order shortly after filing this complaint.

1

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are state officials whose offices are located in this district.

## FACTUAL BACKGROUND

### A. Plaintiff's Background

6. Plaintiff is a forty-five-year-old man.

7. Plaintiff is required under Tennessee law to be registered on Tennessee's Sex Offender Registry (T.C.A. § 40-39-201 et seq.) due solely to convictions for two counts of Sexual Battery (T.C.A. § 39-13-505) for offenses that occurred in 1999.

8. Solely due to Plaintiff's 1999 offenses, Tennessee law deems him "Sexual" and subjects him to lifetime[2] registration on the sex offender registry and a host of restrictions, obligations, and punishments.

9. The bulk of Tennessee's laws deeming Plaintiff "Sexual" and subjecting him to lifelong restrictions, obligations, and punishments on the sex offender registry were not passed until several years after Plaintiff was convicted of his most recent qualifying offense.

### B. Tennessee's Sex Offender Registration and Monitoring Regime

10. In 1994, Tennessee passed its first ever sex offender registry law. However, this law required only that offenders register in a private law enforcement database.

11. Tennessee continued expanding the registry laws through the nineties, increasing reporting requirements and, eventually, making sex offender registrations public for those who had committed their offenses after July 1, 1997.

---

[2] Because one of the victims of Plaintiff's cases was 11 years old at the time of the offense, Plaintiff is ineligible for removal from SORA under Tennessee's state law provisions. T.C.A. § 40-39-207(g)(2)(C).

12. Tennessee continued periodically passing laws expanding its sex offender registration and monitoring regime, until in 2004 Tennessee passed sweeping new restrictions on convicted sex offenders hereinafter referred to as "SORA."

13. SORA imposed stringent registration and reporting requirements on statutorily defined "sexual offenders," "violent sexual offenders," and "offenders against children," and severely limited where sex offenders could live, work, and go.

14. SORA applied retroactively to past offenders, imposing its labels, restrictions, obligations, and punishments even where an offender's only qualifying offenses had occurred prior to SORA's enactment.

15. In the years since 2004, Tennessee has periodically enacted amendments to SORA, almost all of which have made it even more draconian, intrusive, and punitive.

16. Under present law,[3] Tennessee's SORA regime requires the following affirmative obligations from Plaintiff, on pain of criminal prosecution:

    a. Quarterly registration with local law enforcement;

    b. Payment of annual registration and monitoring fees;

    c. Re-registration within forty-eight hours if Plaintiff relocates to a new municipality or county, even on a temporary basis for work or school;

    d. When in public, <u>always</u> carry his state-issued identification with him, which must have a sex offender designation on it.

17. Tennessee's SORA regime includes a "Tennessee Sex Offender Registry" website maintained by the Tennessee Bureau of Investigation ("TBI"), which makes the following information about Plaintiff public:

    a. Name

---

[3] T.C.A. § 40-39-201 *et seq.*

3

Case 3:23-cv-00887   Document 1   Filed 08/22/23   Page 3 of 10 PageID #: 3

b. Classification of "SEXUAL"

   c. Status of "ACTIVE"

   d. Date of birth

   e. Full criminal history

   f. Residential address

   g. Race and gender

   h. Last date of information verification

   i. Most recent photograph submitted to TBI

   j. Driver's license and/or state identification number

   k. Physical description including height, weight, eye color, hair color, tattoos, scars, and marks

   l. Criminal history, including the date of all arrests and convictions, probation and/or parole status, and the existence of any outstanding warrants

   m. Address of Plaintiff's employer(s)

   n. License plate number and description of Plaintiff's vehicle(s)

18. SORA prohibits Plaintiff from the following, on pain of felony criminal prosecution:

   a. Working or residing within 1000' of a school, day care center, other child care facility, public park, playground, recreation center, or public athletic field;

   b. Residing within 1000' feet of the victims from Plaintiff's criminal case, or any of the victims' family members; coming within 100' of the victims; or, contacting the victims without their consent.

   c. Any of the following, unless picking up or dropping off his own child at school after giving written notice of his sex offender status to the school's principal, or

4

attending a conference with officials at a school, day care, child care, recreation center, or playground with written permission from the administrator:

　　　i. Entering the premises of any school, day care center, other childcare facility, public park, playground, recreation center, or public athletic field when there is reason to believe that children may be present;

　　　ii. "Stand[ing], sit[ting] idly, or remain[ing]" within 1000' feet of any school, day care center, other child care facility, public park, playground, recreation center, or public athletic field "while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there;"

　　　iii. Being within any vehicle owned, leased, or contracted by a school, day care, childcare, or recreation center when children under 18 years of age are present;

　d. Residing with two or more other convicted sex offenders;

　e. Being alone with a minor in a "private area."

　f. Residing with, or having an overnight visit in, a place in which a minor is present.

19. SORA authorizes the following additional optional punishments against Plaintiff:

　a. Public libraries may ban Plaintiff from their premises;

　b. Municipalities may implement a "community notification system" to alert members of the public should Plaintiff indicate his intention to move there;

　c. A municipality where Plaintiff resides may charge Plaintiff up to $50 per year toward the cost of its community notification system.

5

### C. Specific Impacts of SORA on Plaintiff

20. SORA's impositions, detailed at ¶¶ 16 – 19, have substantially interfered with Plaintiff's career, family, reputation, and overall enjoyment of life and will continue to substantially interfere so long as Plaintiff is subject to them.

21. Under current law, Plaintiff will continue to be subjected to these SORA impositions for the rest of his life.

22. SORA requires Plaintiff to report annually, and each time he reports he must sign his acknowledgment of the SORA rules. The rules are complex, and each time he reports it seems like there are new rules in place. Consequently, Plaintiff routinely feels anxiety that he could be arrested because of a rule change that he is not even aware of.

23. Plaintiff has a long-term girlfriend, whom he has been with for approximately seven years. Plaintiff would like to marry his girlfriend, and would like to have children with her. However, Plaintiff's girlfriend has four minor children, so because of SORA Plaintiff cannot live with her. Consequently, Plaintiff feels that he cannot make her a *bona fide* proposal and cannot have children with her, since he cannot provide her with a true married life or be a real father to their hypothetical children.

24. Plaintiff is as involved as he can be in his girlfriend's children's lives, within the prohibitions of SORA. The children's father is not very reliable, and Plaintiff would like to step into the role of a *bona fide* stepfather to help give them the love and support they need. However, because of SORA Plaintiff cannot be alone with them, cannot live in the same home as them, and cannot attend their school and extracurricular events. If it were not for these SORA restrictions, Plaintiff would be more involved in his girlfriend's children's lives and would be able to do more to make them feel valued and important.

25. Because of SORA, Plaintiff had difficulty maintaining employment and ended up having to start his own business as a pool leak diver. Plaintiff has had to turn down higher paying job opportunities because of the SORA restrictions. As to his business, although Plaintiff is able to make a living with it he routinely perceives that he is likely losing business due to SORA. Potential clients will contact him, get all the way to where they seem about to hire him, and then suddenly disappear. While this may happen for any number of reasons in any particular case, it is likely that at least some of the time this is because these clients have found Plaintiff's SORA entry and are scared of him. Thus, Plaintiff has lost and continues to lose substantial income due to SORA.

26. Plaintiff has been pushed out of housing multiple times due to SORA. At apartment complexes, Plaintiff was initially allowed to lease an apartment only for the management to come back after the fact and tell him that because of the registry they would not renew his lease and wanted him to voluntarily vacate early. Eventually, Plaintiff bought a house to solve this problem – however, in selecting his home Plaintiff was severely limited by the SORA exclusion zones.

27. Being on the registry has subjected Plaintiff to public shaming and, from Plaintiff's perspective, vandalism. Plaintiff's mailbox has been mysteriously destroyed numerous times, and on those occasions nothing was done to his neighbors' mailboxes. Hoses and other garden tools have mysteriously gone missing from Plaintiff's yard. Because of incidents like these and stories in the news, Plaintiff worries about the ever-present possibility of vigilante attack.

28. Plaintiff has three minor nieces in Columbia, Tennessee. Although Plaintiff would like to be active in his niece's lives, the SORA restrictions make it impossible for him to attend their events or take them to public places.

29. SORA severely restricts Plaintiff's recreational activities. Plaintiff would like to attend Titans and Volunteers games, would like to go camping in state parks, would like to take his dog for a walk in the public parks, and would like to attend music events at public amphitheaters. Because of SORA, Plaintiff can do none of these things.

30. In addition to these specific impacts, Plaintiff has dealt with and continues to deal with a host of other indignities due to SORA, such as: searches of his home; travel restrictions from other states that interfere with Plaintiff's ability to take out-of-state jobs or see out-of-state family; not being permitted to vacation on cruise lines; restrictions on where and how he can volunteer in the community; and having to disclose family members' names in the SORA registration process, which is humiliating and invasive for them.

### CLAIMS FOR RELIEF

#### COUNT I: EX POST FACTO VIOLATION IN VIOLATION OF ARTICLE I, § 10 OF THE U.S. CONSTITUTION
#### (42 U.S.C § 1983)

**(ALL DEFENDANTS)**

31. Plaintiff hereby reincorporates paragraphs 1 – 30 by reference.

32. As applied to Plaintiff, Tennessee's SORA regime constitutes "punishment" within the meaning of the *ex post facto* clause of Article I, § 10 of the U.S. Constitution.

33. Defendants Lee and Rausch are proper official capacity defendants because they both have roles in enforcing Tennessee's SORA regime.

34. Plaintiff is entitled to declaratory and injunctive relief prohibiting Defendants from continuing to enforce Tennessee's SORA regime on him in violation of his constitutional right against *ex post facto* punishment.

## REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.
2. That the Court grant a preliminary injunction enjoining Defendants from enforcing Tennessee's SORA regime against Plaintiff solely on the basis of his pre-SORA convictions.
3. That judgment for Plaintiff enter against the Defendants on each count.
4. That the judgment declare that it is unconstitutional for Tennessee to retroactively impose its SORA regime on Plaintiff solely on the basis of his pre-SORA convictions.
5. That the judgment permanently enjoin Defendants from enforcing Tennessee's SORA restrictions against Plaintiff solely on the basis of his pre-SORA convictions.
6. That Plaintiff be awarded his attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).
7. That the court costs in this matter be taxed to Defendants.
8. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
2901 Dobbs Ave
Nashville, TN 37211
T: (615) 429-4717 / F: (615) 229-6387
E: Kyle@relentlesslaw.com